IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS JAMES IMHOFF,<br><br>Defendant. | CR 20–24–BLG–DLC<br><br><br>ORDER |

Before the Court is Defendant Nicholas James Imhoff's Supplemental Motion to Suppress. (Doc. 41.) The Court previously denied Imhoff's first motion to suppress (Doc. 38) following an evidentiary hearing, but it granted Imhoff leave to file a supplemental motion provided that the motion raised novel and relevant issues (39). Assuming that the supplemental motion meets these criteria, the Court nonetheless denies the motion. Imhoff's constitutional rights were not violated when Trooper Erick Fetterhoff extended a traffic stop to conduct a dog sniff of Imhoff's rental vehicle.

To avoid unnecessarily duplicating efforts, the Court incorporates the factual findings, legal standards, and analysis set forth in its Order of July 9, 2020. (Doc. 41.) Now, as then, the Court finds that Trooper Fetterhoff "ha[d] a 'particularized and objective basis' for suspecting legal wrongdoing" such that Imhoff's continued

1

detention did not violate his constitutional rights. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–418 (1981)).

Imhoff submits, and the Court considers, three additional pieces of evidence: (1) Trooper Fetterhoff's police report, which the parties failed to provide prior to the hearing (Doc. 41-1); (2) the Montana Highway Patrol's policy regarding video and audio recordings; and (3) the Montana Highway Patrol's general code of conduct. These documents do not alter the analysis set forth in the order denying Imhoff's first suppression motion.

## I. Trooper Fetterhoff's Police Report

Imhoff argues that the police report describing the incident proves that Trooper Fetterhoff did not extend the stop on the basis of the five-day, round-trip rental contract, which the Court previously described as "[f]ar and away, the most significant factor" in its reasonable suspicion determination. (Doc. 28 at 10.) The Court disagrees for two reasons.

First, the report demonstrates that Trooper Fetterhoff did, in fact, rely on the rental contract. He wrote:

> I was provided a rental contract for the vehicle. The vehicle was a 5 day rental from Las Vegas, from which Imhoff stated he was coming . . . . Imhoff stated he was 'going back to work in North Dakota, working in the oilfield.' From my experience, previous traffic stops of oilfield workers, and knowledge of the oilfield, a five day rental is not consistent with normal shift operation in the oilfield.

(Doc. 41-1 at 2.) Although Fetterhoff did not explicitly mention that the vehicle was due back in Las Vegas at the end of the rental term, he certainly suggested as much, as Fetterhoff noted the inconsistency between the contract and Imhoff's stated intention to stay in North Dakota for work. The Court therefore rejects Imhoff's contention that "the rental contract return date factor was created by counsel for the Government in the briefing." (Doc. 41 at 3.)

Second, the reasonable suspicion test is not overly concerned with Trooper Fetterhoff's subjective thought process. "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop . . . , and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion . . . ." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Here, the five-day, round-trip rental contract is a "historical fact[]," which, coupled with the other facts known to Fetterhoff at the time of the stop, would suggest to an "objectively reasonable police officer" that the driver of the vehicle was acting as a courier. *Id.*

## II.   Video/Audio Recording Policy

Imhoff next argues that Trooper Fetterhoff was not in compliance with the Montana Highway Patrol's video/audio recording policy because his interior camera was not functional. Although the Court agrees that police officers should

3

record their official interactions with members of the public, the policy does not affect its reasonable suspicion determination. The Court did not rely on Fetterhoff's credibility or Imhoff's appearance in its prior order. Thus, even assuming that Fetterhoff was out of compliance with the policy, noncompliance would not translate to a finding that the stop was extended in violation of Imhoff's Fourth Amendment rights.

### III.   Code of Conduct

Finally, Imhoff argues that Trooper Fetterhoff violated the Montana Highway Patrol's code of conduct by failing to keep his interior camera "serviceable." (Doc. 41 at 5 (quoting Doc. 41-3 at 5). Again, even assuming that Fetterhoff violated policy, any such violation would not bear on the sole relevant question of whether reasonable suspicion supported Imhoff's extended detention.

Having considered the argument and evidence supporting Imhoff's supplemental motion to suppress, the Court finds again that no Fourth Amendment violation occurred.

Accordingly, IT IS ORDERED that the Defendant's Supplemental Motion to Suppress (Doc. 41) is DENIED.

DATED this 29th day of July, 2020.

_____
Dana L. Christensen, District Judge
United States District Court